IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01704-PAB-MJW

RONALD E. FIELDS,

Plaintiff,

v.

WALGREENS COMPANY,
      a/k/a WALGREENS CO.,

Defendant.

---

**RECOMMENDATION ON
DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Docket No. 79)**

---

**MICHAEL J. WATANABE
United States Magistrate Judge**

This matter is before this court pursuant to a General Order of Reference to United States Magistrate Judge (Including Dispositive Motions) issued by former Chief Judge Edward W. Nottingham on August 29, 2008.  (Docket No. 6).  The case was subsequently reassigned to District Judge Philip A. Brimmer upon his appointment in October 2008.  (See Docket Entry No. 18).

Plaintiff, Ronald E. Fields, brings this action under Title VII of the Civil Rights Act of 1964, as amended, claiming that the defendant, Walgreens, discriminated against him in the terms, conditions, and privileges of his employment and in its termination of that employment because of his race.  In addition, plaintiff claims "[d]efendant retaliated against [him] for opposing Defendant's discriminatory conduct by confronting Defendant about race, retaliation, and continued to be harassed by Defendant for filing and

2

pursuing his first charge . . . ." (Docket No. 1 at 19, ¶ 56). According to the Complaint (Docket No. 1) and Final Pretrial Order (Docket No. 86), plaintiff worked as an assistant manager for the defendant at several of its Denver-area stores on the "graveyard shift" from June 5, 2003, until January 2008 when plaintiff was allegedly "forced to terminate his employment with Defendant due to the continued discrimination and harassment." (Docket No. 1 at 18, ¶ 50). Plaintiff claims he "was a victim of racial discrimination, racial corporate lynching, retaliation, false accusations, forced to work in a hostile environment, and this has been echoed and condoned throughout the company by upper management and Walgreens Company . . . ." (Docket No. 86 at 6, ¶ 21).

Now before the court for a report and recommendation is the Defendant's Motion for Partial Summary Judgment (Docket No. 79). Plaintiff filed a Response (Docket No. 82), and defendant filed a Reply (Docket No. 88). The court has very carefully considered these motions papers as well as applicable Federal Rules of Civil Procedure and case law. In addition, the court has taken judicial notice of the court's file. The court now being fully informed makes the following findings, conclusions, and recommendation.

Rule 56(c) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of

genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)).  "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . .  These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'"  Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).  See Fed. R. Civ. P. 56(e)(2).  However, "[i]n order to survive summary judgment, the content of the evidence that the nonmoving party points to must be *admissible*. . . .  The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but '"the content or substance of the evidence must be admissible."' . . .  Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because 'a third party's description of a witness' supposed testimony is "not suitable grist for the summary judgment mill."'"  Adams v. American Guarantee & Liability Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response."  Southway, 149 F. Supp.2d at 1273.  "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . .  Unsupported allegations without 'any significant probative evidence tending to support the complaint'

4

are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at 1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

Since the plaintiff is not an attorney, his pleadings have been construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).  Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . .  At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

Defendant now moves pursuant to Rule 56(b) for summary judgment on plaintiff's claim of racial discrimination under Title VII.  Defendant asserts that by plaintiff's own admission, his working conditions at the time he quit, and for more than one month before, were anything but intolerable.  Defendant notes that plaintiff admits that when he quit, he was not being mistreated or harassed, got along well with his managers and all others at his store, and experienced no unfair treatment.  Plaintiff's only dissatisfaction

5

was that his work schedule had been changed from seven consecutive days working, followed by seven days off, to a new schedule of four days on, followed by three days off.  Defendant asserts that this claim fails because the undisputed facts demonstrate that plaintiff's working conditions at the time he quit fell far short of the legal standard for constructive discharge.  This court agrees.

"Constructive discharge occurs when the employer by its illegal discriminatory acts has made working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign."  Sandoval v. City of Boulder, 388 F.3d 1312, 1325 (10th Cir. 2004) (quotations omitted).  "Plaintiff must show that [he] had no other reasonable choice but to resign–that the conditions were intolerable. . . .  Thus, the bar to establish such a claim is high."  Bexley v. Dillon Cos., 2006 WL 758474, *4 (D. Colo. Mar. 23, 2006) (citing Sanchez v. Denver Pub. Schs., 164 F.3d. 527, 534 (10th Cir. 1998)).  See E.E.O.C. v. PVNF, L.L.C., 487 F.3d 790, 805 (10th Cir. 2007); Barone v. United Airlines, Inc., 2008 WL 4372674, *8 (D. Colo. Sept. 19, 2008). "In evaluating whether the employee's working conditions would cause such a feeling in a reasonable person, 'we apply an objective test under which neither the employee's subjective views of the situations, nor [his] employer's subjective intent . . . are relevant.'"  E.E.O.C. V. PVNE, L.L.C., 487 F.3d at 805 (quoting Tran v. Trs. of State Colls. in Colo., 355 F.3d 1263, 1270 (10th Cir. 2004)).

Here, a review of the plaintiff's deposition transcript show that he admitted the following.  The store manager at the Walgreens where plaintiff last worked, Clete Morton, "never posed any problem" and treated plaintiff courteously and with respect. (Docket No. 79-2 at 7, lines 5-10).  Plaintiff's other supervisor, Lisa Vix, who according

6

to plaintiff allegedly harassed plaintiff at a previous store by an alleged false accusation, did not harass plaintiff at his last store. (Docket No. 79-2 at 7-9). Plaintiff claims Ms. Vix contributed to the purported hostile environment by "just her being there, just [plaintiff] being there. . . Our history." (Docket No. 79-2 at 9, lines 15-21). In addition, plaintiff testified that at the last store Ms. Vix did not do anything verbally that plaintiff felt subjected him to racial discrimination or harassment, nor did she did make any decisions or do anything behind the scenes that constituted racial mistreatment of plaintiff. (Docket No. 79-2 at 10-11). He "stayed far from her." (Docket No. 79-2 at 10, line 24). Plaintiff further testified that he did not object to his transfer. (Docket No. 79-2 at 10, line 6). When asked if he told defendant that he did not want to work near Ms. Vix, plaintiff responded,

> I told them I don't want – everyone knew that I preferred a seven on, seven off store. Everyone. And I believe in a conversation with James, one of the loss prevention managers, they kept asking me, "Why are you working nights? I said, "I am lasting this long for one reason. I work seven on, seven off. I'm lasting this long." After that statement, I was transferred to [f]our on, three off . . . .

(Docket No. 79-2 at 10, lines 10-20). In fact, plaintiff testified that the real reason he did not want to work at that store was the schedule, namely, working four days and then having three days off, as opposed to his preferred schedule of working seven days and then having seven days off. (Docket No. 79-2 at 17, lines 4-8). Plaintiff admitted that nothing happened that he considered to be unfair because of his race while he was at that store for his last six weeks of employment with the defendant. (Docket No. 70-2 at 23, lines 9-13). He then testified that aside from not caring for the new work schedule, he had a problem working for Ms. Vix, whom he thought was a racist. Plaintiff,

however, admitted he worked the graveyard shift, she worked days, and they just saw each other in passing when he was leaving and she was arriving. (Docket No. 79-2 at 23-24). Furthermore, plaintiff then admitted again that neither Ms. Vix nor anyone else mistreated him while he worked at that last store. (Docket No. 79-2 at 24, lines 18-24). He testified that he got along with the other workers at that store, they were nice and respectful to him, no harsh words were spoken to him, and he was not injured in any way while he worked there. Nothing new happened while he was there for six weeks, but he was upset before the transfer. (Docket No. 79-2 at 24-25). He did not quit back in early December when he was transferred for "[n]o good reason." (Docket No. 79-2 at 26, lines 19-20). Plaintiff's testimony certainly does not show that he had no other reasonable choice but to resign because the conditions were intolerable.

In response, plaintiff submitted over 200 pages of exhibits, and asserts that based upon such exhibits, "he has shown enough substantial evidence that a dispute of material facts exists and there is a sufficient likelihood that a reasonable jury will return a verdict favorable for the Plaintiff." (Docket No. 82 at 7). Plaintiff, however, cannot defeat the motion for partial summary judgment by merely citing attached documents in general and then making a conclusory allegation that there is a genuine issue of material fact. See Gamble, Simmons & Co. v. Kerr-McGee Corp., 175 F.3d 762, 773 n.5 (10th Cir. 1999) ("In the absence of sufficient citation to record support for a party's allegations, we decline to search for the proverbial needle in a haystack."); Ford v. West, 222 F.3d 767, 777 (10th Cir. 2000) (The court was "wary of becoming advocates who comb the record of previously available evidence and make a party's case for it."). "It is the duty of the parties, not the Court, to provide and point to evidence in the record

supporting their positions. . . . It is not this Court's task to comb through Plaintiff's submissions in an effort to link alleged facts to [his] arguments." Barone v. United Airlines, Inc., 2008 WL 4372674, *4 (D. Colo. Sept. 19, 2008). In any event, the court has reviewed the exhibits submitted by plaintiff and finds that there is nothing in the record which creates a genuine issue of material fact with respect to his constructive discharge claim.

Based upon the evidence presented, and viewing the facts in the light most favorable to the plaintiff, no reasonable juror could find that a reasonable person in the plaintiff's circumstances would have had no other reasonable choice but to resign because the conditions were intolerable. Plaintiff's testimony shows that he left not because of any improper and intolerable actions by any of his supervisors and/or co-workers at that store, but because of his schedule which required that he work four days and then have three days off rather than having his preferred schedule of working seven days and then having seven days off. Plaintiff has not shown intolerable working conditions that support a constructive discharge claim. See Grube v. Lau Industries, Inc., 257 F.3d 723, 728 (7th Cir. 2001) (Transfer from a first to a second shift, unaccompanied by a reduction in pay or significantly diminished job responsibilities, did not support a constructive discharge claim. "[W]ere we to hold that a mere change in working hours would rise to the level of creating a conditions so objectively unbearable as to allow an employee to quit and then bring a claim of constructive discharge, employers would be in a most precarious position in adapting and maintaining employee's work schedules to fit within the parameters of their business needs."); Mondaine v. American Drug Stores, Inc., 408 F. Supp.2d 1169 (D. Kan. 2006) ("Plaintiff

9

did not raise a genuine issue of material fact whether she had no choice but to quit. Scheduling changes to work night shifts and the day before Mother's day on one-day notice . . . are not adverse employment actions and certainly do not create an intolerable working environment."); Duhe v. U.S. Postal Service, 2004 WL 439890, *10 (E.D. La. Mar. 9, 2004) ("Changes in work schedule, purely lateral transfers, transfers requiring additional commuting time, and the assignment of extra work are neither tangible employment actions nor changes in employment sufficient to support a claim of constructive discharge."). See also Wagner v. Sanders Assocs., Inc., 638 F. Supp. 742, 745 (C.D. Cal. 1986) ("The undisputed fact that he remained in his new position for several months before resigning goes a long way toward destroying his assertion that the transfer created an intolerable situation.").

In sum, this court finds that the plaintiff's constructive discharge claim fails as a matter of law.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendant's Motion for Partial Summary Judgment (Docket No. 79) be granted to the extent that judgment be entered for the defendant and against the plaintiff on the plaintiff's constructive discharge claim.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific**

10

**objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  October 21, 2009                s/ Michael J. Watanabe
       Denver, Colorado                Michael J. Watanabe
                                       United States Magistrate Judge